NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

HECTOR HUGO GARCIA DEL CASTILLO, *Appellant.*

No. 1 CA-CR 16-0564
FILED 9-14-2017

Appeal from the Superior Court in Maricopa County
No.  CR2015-156226-001
The Honorable Dean M. Fink, Judge

**AFFIRMED AND REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Rena P. Glitsos
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Michael J. Brown joined.

---

**C A M P B E L L**, Judge:

¶1       Hector Hugo Garcia Del Castillo was convicted of possession of dangerous drugs for sale and possession of narcotic drugs for sale, both class 2 felonies. Ariz. Rev. Stat. ("A.R.S.") §§ 13-3407, -3408. On appeal, Garcia Del Castillo challenges only the trial court's imposition of the fines required by each of those statutes. He raises two arguments: first, the fines are unconstitutional as applied to him; second, the trial court abused its discretion by failing to consider his financial status in imposing the fines. We disagree and affirm, remanding only for the limited purpose of clarification from the trial court concerning the assignment of a payment schedule.

### FACTS AND PROCEDURAL BACKGROUND

¶2       In December 2015, police officers seized approximately ten pounds of methamphetamine (a dangerous drug) and less than one pound of cocaine (a narcotic drug) from Garcia Del Castillo's residence in Phoenix. At trial, the State introduced evidence that the wholesale value of the seized drugs was about $30,000 for the methamphetamine and between $8,000 and $10,000 for the cocaine. Garcia Del Castillo neither objected to the State's evidence nor offered alternative testimony concerning the value of the drugs.

¶3       The jury found Garcia Del Castillo guilty on both charges. The minimum fine a court must impose on a defendant convicted of possession of a dangerous drug for sale is mandated by A.R.S. § 13-3407(H):

> In addition to any other penalty prescribed by this title, *the court shall order* a person who is convicted of a violation of this section to pay a fine of not less than one thousand dollars or three times the value as determined by the court of the dangerous drugs involved in or giving rise to the charge, whichever is greater, and not

more than the maximum authorized by chapter 8 of this title. *A judge shall not suspend* any part or all of the imposition of any fine required by this subsection.

(Emphasis added.)

¶4        Correspondingly, A.R.S. § 13-3408(F) provides that a court shall order a defendant convicted of possession of a narcotic drug for sale to "pay a fine of not less than two thousand dollars or three times the value as determined by the court of the narcotic drugs involved in . . . the charge, whichever is greater, and not more than the maximum authorized by chapter 8 of this title." The maximum possible fine for each of the above convictions is capped at $150,000 by A.R.S. § 13-801(A). Furthermore, A.R.S. § 13-808(A) provides:

> If a defendant is sentenced to pay a fine . . . , the court . . . *may grant* permission for payment to be made within a specified period of time or in specified installments. If no such permission is embodied in the sentence the fine shall be payable immediately.

(Emphasis added.)

¶5        Pursuant to statute, the trial court imposed a $90,000 fine for Garcia Del Castillo's conviction of possession of a dangerous drug for sale and a $30,000 fine for his conviction of possession of a narcotic drug for sale. The fines represented three times the value of the respective drugs involved in each charge. The trial court ordered Garcia Del Castillo to pay the cumulative $120,000 fine "beginning" on the first day of the fourth month following Garcia Del Castillo's release from prison. Garcia Del Castillo timely appealed.

## DISCUSSION

¶6        On appeal, Garcia Del Castillo does not contest the accuracy of the evidence of the drugs' values relied on by the trial court when imposing the $30,000 and $90,000 fines. Rather, Garcia Del Castillo argues the imposition of the two fines are unconstitutional as applied to him and that the trial court abused its discretion by "refusing" to consider his financial ability to pay the fines. We disagree.

3

## I.     Garcia Del Castillo's Fines Are Constitutional

¶7        Garcia Del Castillo contends that—because of his purported indigence—his fines are unconstitutionally excessive as well as cruel and unusual, violating both the United States and Arizona constitutions.[1] Although Garcia Del Castillo argued only that the fines were unconstitutionally excessive at trial, he asserts we should also review for cruel and unusual punishment because the line between these violations "is frequently blurred." *See State v. Wise*, 164 Ariz. 574, 576-77 (App. 1990). We review de novo claims regarding the constitutionality of a criminal sentencing statute. *State v. Randles*, 235 Ariz. 547, 549, ¶ 4 (App. 2014).

¶8        The Eighth Amendment to the United States Constitution and Article 2, Section 15, of the Arizona Constitution provide that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Mandatory drug fines based on quantity and value of the drugs at issue "do not per se violate state and federal prohibitions against excessive fines or cruel and unusual punishment." *State v. Delgadillo*, 174 Ariz. 428, 429 (App. 1993) (citations omitted). It is "extremely rare" that a statute that does not generally violate the prohibition against cruel and unusual punishment will result in an unconstitutionally disproportionate sentence as applied to a specific defendant. *State v. Florez*, 241 Ariz. 121, 128, ¶ 23 (App. 2016) (citation omitted).

¶9        In *State v. Wise*, this court explained that an excessive fine is one that "exceeds reasonable, usual, proper, or just punishment" or is "one so disproportionate to the offense that it shocks public sentiment and affronts the judgement of reasonable people." 164 Ariz. at 576 (citations omitted). The court also noted the existence of "a kind of loose proportionality test" for determining whether a fine is unconstitutionally excessive, balancing: (1) the object designed to be accomplished by the fine; (2) the importance and magnitude of the public interest sought to be protected by the fine; (3) the circumstances and nature of the act for which the fine is imposed; (4) the preventive effect the fine has upon the commission of the particular kind of crime; and (5) "in some instances" the ability of the accused to pay the fine. *Id.* (citation omitted). The ability to pay, however, is not dispositive. *Id.*

---

[1]     "Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence." *State v. Berger*, 212 Ariz. 473, 479, ¶ 28 (2006) (citation omitted).

¶10        Ultimately, the *Wise* court held—"in light of a strong public commitment to eradicating the use of illicit drugs"— a fine totaling $205,600 on an unemployed defendant for possession of narcotics for sale was not disproportionate to his offenses and therefore not unconstitutionally excessive. *Id*. "This is particularly true in view of the enormous profits to be garnered from trafficking in drugs," and "[a] large fine directed at anyone in the drug trade is a rational attempt to cripple the industry." *Id*.

¶11        We conclude Garcia Del Castillo's fines are not disproportionate to his convictions and therefore are not unconstitutionally excessive. Garcia Del Castillo's purported indigence does not outweigh the relevant public policy considerations. As the court explained in *Wise,* his fines do not "plainly and undoubtedly exceed[] any reasonable requirements for redressing wrong." *Id*. (citation omitted).

¶12        The *Wise* court also addressed another argument raised by Garcia Del Castillo: that his fines amount to cruel and unusual punishment. The court considered: "[(1)] The gravity of the offense and the harshness of the penalty; [(2)] the severity of the penalty as compared to penalties imposed for other criminal acts in the jurisdiction; and [(3)] the severity of the penalty as compared to penalties imposed for the same crime in other jurisdictions." *Id*. at 577 (citing *Solem v. Helm*, 463 U.S. 277, 290-91 (1983)). Noting that other states impose equally severe fines, the court observed "the fact that the fine is tied to the value of the drugs involved is a recognition of the large profits derived from the sale of drugs and is a rational attempt to take the profit out of this activity." *Id*. The court concluded the defendant's fine was not cruel and unusual. *Id*.

¶13        For the same reasons as those noted by this court in *Wise*, we conclude Garcia Del Castillo's fines violate neither the federal nor state prohibitions against cruel and unusual punishment.

**II.    The Trial Court Did Not Abuse Its Discretion by "Refusing" to Consider Garcia Del Castillo's Ability to Pay the Fines**

¶14        Garcia Del Castillo contends the trial court abused its discretion in multiple ways by "refusing" to consider his ability to pay the fines. First, he argues the trial court "should" have performed an explicit assessment of the constitutionality of his fines, such as the "loose proportionality" test mentioned by this court in *Wise*, *see supra* ¶ 9, expressly incorporating his ability to pay as a factor. Second, Garcia Del Castillo argues the trial court "should" have ameliorated the "harshness" of the statutes mandating the fines by establishing a payment schedule to

take effect upon his release, but that it "ignor[ed] his financial situation" and "failed" to do so. We disagree.

**¶15** "A trial court has broad discretion in sentencing and, if the sentence imposed is within the statutory limits, we will not disturb the sentence unless there is a clear abuse of discretion." *State v. Ward*, 200 Ariz. 387, 389, ¶ 5 (App. 2001) (citations omitted). We may find an abuse of discretion "when the sentencing decision is arbitrary or capricious, or when the court fails to conduct an adequate investigation into the facts relevant to sentencing." *Id*. at ¶ 6 (citation omitted).

**¶16** First, there is nothing in the record suggesting the trial court "refused" to consider or even "ignored" Garcia Del Castillo's financial status. On the contrary: The trial court waived an 83 percent surcharge on both fines entirely, suggesting Garcia Del Castillo's purported indigence was not ignored. Furthermore, Garcia Del Castillo does not point to any authority requiring the trial court to explicitly engage in a "loose proportionality" analysis expressly incorporating his financial status before it reached its ruling on the constitutionality of his fines. Garcia Del Castillo raised and discussed the issue of unconstitutional excessiveness with the trial court, and the trial court ruled the fines were constitutional. It is therefore presumed the trial court performed the proper constitutional analyses, even if it did so implicitly. *See State v. Trostle*, 191 Ariz. 4, 22 (1997) (the trial court is presumed to know the law and to apply it in making its decisions). Accordingly, the trial court did not abuse its discretion by declining to explicitly run through the "kind of loose proportionality test" mentioned by the court in *Wise. See supra* ¶ 9.

**¶17** Second, both A.R.S. § 13-3407(H) and A.R.S. § 13-3408(F) required the trial court to impose fines on Garcia Del Castillo equaling three times the value of the seized drugs for each count. The trial court had no discretion to reduce those amounts as long as each separate fine remained below the statutory cap of $150,000 pursuant to A.R.S. § 13-801(A). The trial court did, however, maintain the discretion to determine whether Garcia Del Castillo may pay his fines according to a payment schedule under A.R.S. § 13-808(A).

**¶18** Again, Garcia Del Castillo points to no authority *requiring* the trial court to establish a payment schedule in light of his financial status. Rather, "although we will consider ability to pay as one factor toward a claim that a fine is disproportionate, the trial court does not have to explicitly consider the defendant's ability to pay when imposing a fine or its payment schedule." *State v. Lopez*, 175 Ariz. 79, 81 (App. 1993). While the

*Wise* court noted that the "mandatory nature" of the statutes and the fact that they do "not expressly provide for the consideration of a defendant's ability to pay are tempered by the ability of the sentencing judge to set the schedule for payment," 164 Ariz. at 577, nothing in *Wise* or the statute requires the trial court to deploy this ability in any particular way. Therefore, the trial court had discretion to decline to establish a payment schedule.

¶19        The only remaining issue, as the State acknowledges, is to clarify whether the trial court actually intended to assign a payment schedule, but unintentionally omitted it from the judgments of fines and fees. The trial court ruled Garcia Del Castillo's fines would be due "beginning," rather than "on," the first day of the fourth month following his release from prison. We remand for the limited purpose of directing the trial court to clarify whether it intended to assign a payment schedule that begins on that date, or whether the entirety of the fines is due on that date—either of which would be within the trial court's discretion.

## CONCLUSION

¶20        For the foregoing reasons, we affirm and remand for clarification.



AMY M. WOOD • Clerk of the Court
FILED:  AA